**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

MID-AMERICA APARTMENT
COMMUNITIES, INC.,

     Plaintiff,

v.

LIBERTY INSURANCE UNDERWRITERS INC.,
GREAT PRAIRIE RISK SOLUTIONS, INC.,
and LOCKTON INSURANCE UNDERWRITERS, INC.

     Defendants.

Case No.:_____

---

**COMPLAINT**

---

Plaintiff Mid-America Apartments, Inc. brings this Complaint against the above-named Defendants as set forth herein and would state as follows.

### I. PARTIES

1.     Plaintiff Mid-America Apartment Communities, Inc. ("Plaintiff" or "MAA") is a corporation formed and organized under Tennessee law. Plaintiff's principal place of business is in Shelby County, Tennessee. Plaintiff is a citizen of the State of Tennessee. Plaintiff owns and operates apartments in Tennessee and other states, among other business interests.

2.     Defendant Liberty Insurance Underwriters Inc. ("Liberty") is a corporation formed and organized under Massachusetts law with its principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116. Defendant Liberty is a citizen of the State of Massachusetts. Defendant Liberty is an insurance company authorized to transact insurance business in Tennessee and may be served with process through the Tennessee Commissioner of Insurance.

1

3.      Defendant Great Prairie Risk Solutions, Inc. ("Great Prairie") is a corporation formed and organized under Illinois law with its principal place of business at 111 South Pfingsten Road, Suite 165, Deerfield, Illinois 60015. Defendant Great Prairie is a citizen of the State of Illinois.  Defendant is a third-party administrator and may be served with process through Mr. Joel R. Davis, 111 South Pfingsten Road, Suite 165, Deerfield, Illinois 60015.

4.      Defendant Lockton Companies LLC ("Lockton") is formed and organized under Missouri law with a principal place of business at 444 W. 47th Street, Suite 900, Kansas City, MO 64112. Thus, Defendant Lockton is a citizen of the State of Missouri.  Defendant is an insurance broker authorized to transact insurance business in Tennessee and may be served with process through Corporate Creations Network, Inc., 5865 Ridgeway Center Parkway, Suite 395, Memphis, Tennessee 38120.

## II. JURISDICTION

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy is well in excess of $75,000.00.

## III. FACTS

6.      On or about July 1, 2018, Defendant Liberty issued to Plaintiff a commercial excess/umbrella liability insurance policy, policy number #1000262366-02, providing coverage in accordance with the terms and conditions therein (the "Policy") for the following policy period: July 1, 2018 to July 1, 2019.

7.      The Policy issued by Defendant Liberty obligated it to provide excess liability coverage for certain claims made against Plaintiff, subject to the terms and conditions of the Policy.

8.      Here, Plaintiff timely paid all premiums to Defendant Liberty and otherwise complied with all conditions precedent to coverage.

9.      At the time that the above-mentioned insurance policy was issued, Defendant Lockton was Plaintiff's insurance Broker of Record and negotiated Plaintiff's application of insurance with Defendant Liberty.  As such, and as set forth under Tennessee law, Defendant Lockton was the agent of Defendant Liberty and under Tennessee law, any knowledge of the agent (Defendant Lockton) is automatically imputed to the principal (Defendant Liberty).

10.     On or about September 24, 2018, Robert Trentham, a resident at one of Plaintiff's properties in Williamson County, Tennessee, slipped and fell on a rain dampened footbridge.  Mr. Trentham proceeded to make a claim (the "Underlying Claim") against Plaintiff.

11.     After receiving the Underlying Claim, on or about September 28, 2018, Plaintiff reported the Underlying Claim to Great Prairie and, either Plaintiff or Great Prairie reported the Underlying Claim to Lockton.  The Underlying Claim was the type of claim within the coverage afforded by the Policy.  Further, Defendants Great Prairie and Lockton had knowledge of the Underlying Claim.

12.     Defendant Great Prairie subsequently notified Plaintiff's primary insurance carrier, QBE, of the claim, but Defendant Great Prairie committed an error and/or omission in failing to notify Defendant Liberty of the claim even though it was contractually obligated to do so under terms and conditions of the parties' Claim Service Agreement (the "Great Prairie Agreement).  A copy of the Great Prairie Agreement is attached hereto as **Exhibit A** and incorporated by reference herein.

13.     Pursuant to the terms of the Claim Service Agreement, Defendant Great Prairie specifically agreed to "Notify the primary and excess carriers of all claims as required by the primary and excess carrier reporting guidelines." Defendant Great Prairie committed misconduct or an error and/or omission in failing to notify Defendant Liberty of the claim even though it was

contractually obligated to do so under terms and conditions of the Great Prairie Agreement.

14.     Further, Defendant Great Prairie agreed in the Great Prairie Agreement that it would:

> …indemnify and hold harmless the Client and its directors, officers, employees, attorneys, subsidiaries and affiliates from and against any and all claims, loss, liability, costs, damages, and reasonable attorney's fees incurred as the ***direct or indirect result of any misconduct, error or omission*** of the Service Company or any of its directors, officers, employees, subsidiaries, subcontractors, shareholders or affiliates, taken in connection with the furtherance or performance of any provision of this Agreement, provided that said claims, loss, liability, costs, damages, and reasonable attorney's fees have not been directly caused by any misconduct, error or omission on the Client, its directors, officers, employees, subsidiaries and affiliates.

15.     Likewise, Defendant Lockton committed an error and/or omission in failing to notify Defendant Liberty of the claim even though it was contractually obligated to do so under terms and conditions of the parties' Fee For Services Agreement, as amended from time to time ("Lockton Agreement").  A copy of the Lockton Agreement is attached hereto as **Exhibit B** and incorporated by reference herein.

16.     As part of the Lockton Agreement, Addendum "A" thereto set forth the services Lockton was to provide Plaintiff, including, under "Claims Management Services" the affirmative duty to "[p]rocess claim notifications to appropriate insurance carriers."  Lockton failed to notify Defendant Liberty of the Underlying Claim.

16.     A two-day bench trial was held in the Trentham matter on June 28-29, 2021.  The Judge issued a decision/verdict in the case on November 28, 2021, awarding Mr. Trentham a money judgment against Plaintiff in the amount of $2,086,842.39.

17.     After receiving the decision/verdict, Plaintiff discovered that its excess carrier, Defendant Liberty, claimed to have no knowledge of the Underlying Claim.  Defendant Liberty was provided notice of the Underlying Claim or about November 30, 2021 by and through

4

Plaintiff's current insurance broker (Marsh), but denied the coverage for the Underlying Claim on or about September 26, 2022, asserting that Plaintiff failed to provide timely notice to Defendant Liberty as the excess carrier.  Likewise, Plaintiff immediately offered Defendant Liberty the right to participate in the appeal; an offer which Defendant Liberty declined.

18.     Plaintiff appealed the trial court's decision in favor of Mr. Trentham, but the decision was upheld on appeal by the Tennessee Court of Appeals and the Tennessee Supreme Court.  Ultimately, Plaintiff, in order to satisfy the judgment, was required to pay no less than $1,393,972.78, above and beyond the primary layer of insurance in the amount of $1,000,000.00.

19.     Plaintiff has requested and demanded that Defendant Liberty reconsider its denial and cover the Underlying Claim, but Defendant Liberty reiterated its inappropriate denial of coverage on April 29, 2025.

20.     In this case, Defendant Liberty's denial of coverage is contrary to Tennessee law, which requires an insurer to demonstrate actual prejudice from an alleged late notice before coverage may be forfeited.

21.     Indeed, Defendant Liberty has suffered no prejudice as a result of the timing of notice.

22.     Accordingly, Defendant Liberty's refusal to provide coverage constitutes bad faith and a breach of contract that has caused Plaintiff to suffer damages, including but not limited to costs of defense, settlement, and amounts paid in satisfaction of the Underlying Claim.

23.     On or about October 26, 2022, Plaintiff, through its SVP Chief Litigation Counsel, sent notice to Defendant Liberty in compliance with Tenn. Code Ann. § 56-7-105, informing Defendant liberty of Plaintiff's intent to seek statutory bad faith penalties against Defendant Liberty for its refusal to provide coverage for the Underlying Claim.  A copy of this

5

correspondence is attached hereto as **Exhibit C** and incorporated by reference herein.

24.    Plaintiff has requested and demanded that Defendant Great Prairie honor its contractual obligation to indemnify Plaintiff as a result of Defendant Great Prairie's misconduct, error or omission in carrying out its duties under the parties' Claim Service Agreement, but Defendant Great Prairie has failed to do so.

25.     Plaintiff has requested and demanded that Defendant Lockton honor its contractual obligation to indemnify Plaintiff as a result of Defendant Lockton's breach of contract, misconduct, error or omission in carrying out its duties under the Lockton Agreement, but Defendant Lockton has failed to do so.

### Count 1: Breach of Contract Under Tennessee Law Against Defendant Liberty

26.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

27.    The Policy is a valid and enforceable contract between Plaintiff and Defendant Liberty.

28.    Plaintiff performed all obligations required under the Policy or was excused from performance.

29.    Defendant Liberty breached the Policy by refusing to provide coverage and benefits owed under the Policy based on an invalid notice defense.

30.    As a direct and proximate result of Defendant Liberty's breach, Plaintiff has sustained damages in an amount to be proven at trial, but no less than $1,393,972.78.

### Count 2: Breach of Contract Under Tennessee Law Against Defendant Great Prairie

31.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

32.    At all times herein, a valid and enforceable contract existed by and between Plaintiff and Defendant Great Prairie.

33.     Plaintiff performed all obligations required under the parties' agreement/contract or was excused from performance.

34.     Defendant Great Prairie breached its contractual obligations to Plaintiff by failing to notify Defendant Liberty of the Underlying Claim and by failing to indemnify Plaintiff for its errors and/or omissions.

35.     As a direct and proximate result of Defendant's breach, Plaintiff has sustained damages in an amount to be proven at trial, but no less than $1,393,972.78.

### Count 3: Breach of Contract Under Tennessee Law Against Defendant Lockton

36.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

37.     At all times herein, a valid and enforceable agreement existed by and between Plaintiff and Defendant Lockton.

38.     Defendant Lockton breached its contractual obligations to Plaintiff by failing to notify Defendant Liberty of the Underlying Claim.

39.     As a direct and proximate result of Defendant Lockton's breach, Plaintiff has sustained damages in an amount to be proven at trial, but no less than $1,393,972.78.

### Count 4: Professional Negligence under Tennessee Law Against Defendant Great Prairie

40.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

41.     Defendant Great Prairie failed to perform and breached its duties to Plaintiff with reasonable care as Plaintiff's administrator by failing to notify Defendant Liberty of the Underlying Claim.

42.     As a direct and proximate result of Defendant Great Prairie's negligence, Plaintiff has sustained damages in an amount to be proven at trial, but no less than $1,393,972.78.

### Count 5: Professional Negligence under Tennessee Law Against Defendant Lockton

43.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

44.     Defendant Lockton failed to perform and breached its duties to Plaintiff with reasonable care as Plaintiff's insurance broker by failing to notify Defendant Liberty of the Underlying Claim.

45.     As a direct and proximate result of Defendant Lockton's negligence, Plaintiff has sustained damages in an amount to be proven at trial, but no less than $1,393,972.78.

**Count 6: Bad Faith under Tennessee Code Ann. § 56-7-105 Against Defendant Liberty**

46.      Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

47.     Defendant Liberty, as an insurer, owed a duty of good faith and fair dealing to Plaintiff in handling claims under the Policy.

48.      Defendant Liberty's denial of coverage for the Underlying Claim was made in bad faith, as Defendant Liberty failed to demonstrate actual prejudice from the alleged late notice, contrary to Tennessee law requirements.

49      Plaintiff provided Defendant Liberty with notice of the Underlying Claim in compliance with Tenn. Code Ann. § 56-7-105 on or about October 26, 2022, informing Defendant Liberty of Plaintiff's intent to seek statutory bad faith penalties.

50.     Despite receiving proper notice, Defendant Liberty refused to reconsider its denial of coverage, thereby acting in bad faith and causing Plaintiff to suffer damages, including but not limited to costs of defense, settlement, and amounts paid in satisfaction of the Underlying Claim.

51.     As a direct and proximate result of Defendant Liberty's bad faith actions, Plaintiff has sustained damages in an amount to be proven at trial, but no less than $1,393,972.78, plus an additional twenty-five (25%) on the liability for the loss.

52.      Pursuant to Tenn. Code Ann. § 56-7-105, Plaintiff is entitled to recover statutory

penalties, including reasonable attorney's fees and costs, due to Defendant Liberty's bad faith refusal to provide coverage.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant as follows:

A.      Awarding Plaintiff compensatory damages in an amount to be determined at trial;

B.      Awarding Plaintiff pre-judgment and post-judgment interest as permitted by law;

C.      Awarding Plaintiff reasonable attorney's fees and costs and statutory penalties pursuant to Tenn. Code Ann. § 56-7-105, the Client Service Agreement, and other applicable law; and,

D.      Awarding such other and further relief as the Court deems just and proper.

Respectfully submitted,


s/William B. Ryan
William B. Ryan – TN Bar # 20269
Donati Law, PLLC
1545 Union Avenue
Memphis, TN 38104
Phone: 901-278-1004
Email: billy@donatilaw.com

&

s/Clay Culpepper
Lewis C. Culpepper – TN Bar # 23583
Evans Petree P.C.
1715 Aaron Brenner Dr., Suite 800
Memphis, TN 38120
Phone: 901-521-4562
Email: cculpepper@evanspetree.com

Attorneys for Plaintiff