**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | | |
|---|---|---|
| MID-AMERICA APARTMENT COMMUNITIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY INSURANCE UNDERWRITERS, INC., GREAT PRAIRIE RISK SOLUTIONS, INC., and LOCKTON INSURANCE UNDERWRITERS, INC., and MARSH USA, LLC,<br><br>Defendants. | ) | Case No. 2:25-cv-02878-SHL-cgc |

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT MARSH USA, LLC'S MOTION TO DISMISS**

---

Before the Court is Defendant Marsh USA, LLC's ("Marsh") Motion to Dismiss the First Amended Complaint, filed June 22, 2026. (ECF No. 57.) Plaintiff Mid-America Apartment Communities, Inc. ("MAA"), responded on July 22 (ECF No. 65), and Marsh replied to that response on August 19 (ECF No. 69). For the reasons detailed below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

Although the Court previously granted MAA's motion to amend, the First Amended Complaint varies little from the original complaint, whose allegations were previously detailed by the Court. (See ECF No. 45.) The main difference between the complaints is that the First Amended Complaint adds Marsh as a Defendant, after Defendant Lockton Insurance Underwriters, Inc. ("Lockton"), identified Marsh in its answer to the original complaint as potentially being comparatively at fault. The First Amended Complaint asserts three claims

against Marsh: breach of contract (Count 4), professional negligence (Count 7), and equitable indemnity and/or contribution (Count 9). (ECF No. 46.) The following facts from the First Amended Complaint, which are taken as true for the purposes of resolving this Motion, are relevant here.

This case involves a dispute over insurance coverage. According to the First Amended Complaint, Defendant Liberty Insurance Underwriters, Inc. ("Liberty") issued a commercial excess/umbrella liability insurance policy (the "Policy") to MAA, which included both MAA and Mid-America Apartments, L.P. ("MALP") as named insureds. (ECF No. 46 at PageID 415.)[1] MAA is the sole general partner of MALP and "is liable for all debts, obligations, and other liabilities of MALP." (Id.)

Around September 24, 2018, Robert Trentham, a resident at one of MALP's properties in Williamson County, Tennessee, slipped and fell on a rain-dampened footbridge, and filed a claim against MALP. (Id. at PageID 416.) Around four days later, MAA relayed the disputed claim to Defendant Great Prairie Risk Solutions, Inc. ("Great Prairie"), MALP's third-party administrator, and either Great Prairie or MAA reported the claim to Lockton, which was MAA's insurance Broker of Record at the time. (Id.)

While Trentham's claim was pending, MAA and MALP switched their insurance producer and Broker of Record from Lockton to Marsh. (Id.) Marsh became aware of Trentham's claim no later than September 26, 2019. (Id.) According to MAA, Great Prairie notified MAA's primary insurance carrier of Trentham's claim but failed to notify Liberty, even though it was contractually obligated to do so. (Id. at PageID 417.) MAA asserts that Lockton

[1] MAA and MALP's primary commercial general liability insurance policy was issued by QBE Specialty Insurance Company, and had a $1,000,000 per occurrence limit. (Id. at PageID 415–16.)

was also obligated to inform Liberty of the claim, and failed to do so. (Id. at PageID 417–18.) Finally, MAA alleges that Marsh was also contractually obligated to inform Liberty of the claim, but failed to do so. (Id. at PageID 418.)

On November 28, 2021, following a trial, Trentham was awarded a judgment of $2,086,842.39 against MALP. (Id.) After the verdict, MAA discovered that Liberty claimed to have no knowledge of Trentham's claim. (Id.) On November 30, 2021, Marsh informed Liberty of the underlying claim, and Liberty investigated the claim under a reservation of rights. (Id. at PageID 419–20.)

Liberty denied MAA's claim for coverage, asserting that MAA and MALP did not comply with the insurance policy's notice provision. (Id. at PageID 419.) Liberty declined MAA and MALP's offer to participate in the appeal of the trial court's decision. (Id.) Ultimately, the trial court's decision was upheld by Tennessee's Court and Appeals and its Supreme Court, and, to satisfy the judgment, MAA and MALP "were required to pay, and did pay, no less than $1,393,972.78, above the $1,000,000 primary layer to satisfy the excess portion of the judgment[.]" (Id.)

MAA, through Marsh, requested and demanded that Liberty reconsider its denial of coverage. (Id.) MAA alleges that, although there were discussions among Marsh and Liberty's senior executives about Liberty's coverage position, Liberty issued its final denial of coverage on April 29, 2025. (Id. at PageID 420.)

In the First Amended Complaint, MAA alleges, among other things, that Liberty, Great Prairie, and Lockton each breached their contracts with MAA. (Id. at PageID 421.) In its answer to the original complaint, Lockton denied liability and asserted comparative fault as to Marsh, alleging that Marsh's negligence caused or contributed to the damages at issue. (Id.)

In its Motion to Dismiss, Marsh asserts that the breach of contract and professional negligence claims should be dismissed for multiple reasons, including that they are untimely and that they fail to allege essential elements of either cause of action. Marsh asserts that the breach of contract claim fails because MAA "does not allege conduct by Marsh amounting to a breach of the relevant agreement between MALP and Marsh." (ECF No. 57 at PageID 685.) As for the professional negligence claim, Marsh asserts that MAA "does not identify a duty of professional care that Marsh failed to fulfill separate and apart from its contractual obligations to Plaintiff." (Id.) Finally, Marsh argues that "Plaintiff's claim for equitable indemnity and/or contribution . . . must be dismissed because those doctrines are used to allocate liability among joint tortfeasors for a shared injury. They do not allow a plaintiff to recover its own direct damages from a defendant." (Id.)

MAA asserts that Marsh's Motion should be denied because it "rests on a series of arguments that are legally flawed and factually premature." (ECF No. 65 at PageID 741.) As to the statute of limitations arguments, MAA asserts that Marsh "selectively defines the accrual date to suit its narrative while ignoring the discovery rule, the relation-back doctrine under Rule 15(c), and Tennessee's saving statute." (Id.) MAA asserts that Marsh's substantive arguments for failure to state a claim under Rule 12(b)(6) fare no better because "Marsh asks the Court to resolve disputed factual questions and construe ambiguous contractual provisions in Marsh's favor at the pleading stage—precisely the opposite of what Rule 12(b)(6) requires." (Id.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes courts to dismiss a complaint if it fails to comply with the pleading standard in Rule 8. Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (emphasis added) (quoting and discussing, inter alia, Conley v. Gibson, 355 U.S. 41, 47 (1957)). Although Rule 8 does not require detailed factual allegations, a pleading must include more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and should nudge a plaintiff's claims "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. "While plausibility requires relief to be more than speculative, it need not be probable; rather, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely.'" Montesi v. Nationwide Mut. Ins. Co., No. 12-cv-02399, 2013 WL 4522905, *2 (W.D. Tenn. 2013) (quoting Erie County v. Morton Salt, Inc., 702 F.3d 860, 867 (6th Cir. 2012)).

In deciding motions to dismiss for failure to state a claim, courts must construe the complaint "in the light most favorable to the plaintiff, and their allegations" are "taken as true." Cincinnati Gas & Elec. Co., 656 F. Supp. 49, 73 (S.D. Ohio 1986) (citation modified) (citing Lee v. W. Rsrv. Psychiatric Habilitation Ctr., 747 F.2d 1062, 1065 (6th Cir. 1984)). Further, a 12(b)(6) motion may be granted based on an affirmative defense if the validity of the defense is clear on the face of the complaint. See Jones v. Bock, 549 U.S. 199, 215 (2007). The scope of review is generally limited to the pleadings, but courts can consider documents attached or referred to in the pleadings that are "integral to the claims." Commercial Money Center, Inc. v. Ill. Union Ins. Co., 508 F.3d 327, 335–35 (6th Cir. 2007).

"[A] motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of

limitations." Cataldo v. U.S. Steel Corp., 676 F.3d 542, 547 (6th Cir. 2012)). At the same time, however, "dismissing [a] claim under Rule 12(b)(6) is appropriate" when "the allegations in the complaint affirmatively show that the claim is time-barred." Baltrusaitis v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., 86 F.4th 1168, 1178 (6th Cir. 2023) (quoting Cataldo, 676 F.3d at 547).

## ANALYSIS

Marsh asserts that the breach of contract and professional negligence claims should be dismissed as untimely and for failing to allege the elements of the claims. Each of the causes of action is evaluated below, before the Court addresses MAA's claims for equitable indemnity and contribution.

### I. Breach of Contract

Marsh asserts that MAA's breach of contract claim should be dismissed as untimely and because it fails to assert the elements of a breach of contract claim. MAA counters that the claims are timely for multiple reasons, and that, when the facts are construed in MAA's favor, as they must be at this stage in the proceedings, MAA has stated the elements of a claim for breach of contract.

Under Tennessee law, the statute of limitations for breach of contract is six years. Tenn. Code Ann. § 28-3-109(a)(3). The Parties do not dispute that Marsh became aware of Trentham's claim no later than September 26, 2019. It was at that point, MAA asserts, that Marsh was required to notify Liberty of the claim. Marsh asserts that the statute of limitations for MAA's breach of contract claim thus accrued no later than that date because "the cause of action accrues—and the statute of limitations between to run—as of the date of the breach." (ECF No. 57-1 at PageID 699.) Under Marsh's telling, the limitations period thus expired on September

26, 2025. Because MAA first alleged breach of contract against Marsh almost seven months later in its amended complaint, Marsh asserts that the claim is time-barred.

MAA argues its claims are timely for a host of reasons, and, although not all of them are persuasive, only one needs to be to survive the Motion to Dismiss on these grounds. The analysis begins and ends with one that is.

MAA asserts that its claim was timely considering Tennessee's discovery rule, which "is an equitable exception that tolls the running of the statute of limitations until the plaintiff knows, or in the exercise of reasonable care and diligence, should know that an injury has been sustained." Snake Steel, Inc. v. Holladay Constr. Grp., LLC, 625 S.W.3d 830, 836 (Tenn. 2021). According to MAA, it could not have known, and did not discover, that Marsh breached its obligation to notify Liberty until after the November 28, 2021 judgment in the Trentham case. If the six-year limitations period runs from that date, then MAA's April 20, 2026 amended complaint would be timely.

Marsh argues that "[t]he discovery rule does not apply to Plaintiff's claim for breach of contract," as "[t]he Tennessee Supreme Court has declined to apply the discovery rule in breach of contract actions." (ECF No. 69 at PageID 769.) In so doing, it relies on—and overstates—the ruling in Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc., 566 S.W.3d 671 (Tenn. 2019).

In that case, the Tennessee Supreme Court engaged in a lengthy explication of Goot v. Metro. Gov't of Nashville & Davidson Cnty., No. M2003-02013-COA-R3-CV, 2005 WL 3031638 (Tenn. Ct. App. Nov. 9, 2005), which "appl[ied] the discovery rule to toll the breach-of-contract statute of limitations in situations where the alleged breach was inherently undiscoverable." Individual Healthcare Specialists, 566 S.W.3d at 708. The court explained that

"Tennessee intermediate appellate courts, as well as some federal courts, have cited Goot for the general proposition that Tennessee uses the 'inherently undiscoverable' test to determine whether the discovery rule would apply in a breach-of-contract case." Id. at 711 (collecting cases). Nevertheless, prior to its decision in Individual Healthcare Specialists, the Tennessee Supreme Court had "not addressed either the Goot holding or the underlying question of whether, under any circumstances, the discovery rule could apply to toll the six-year statute of limitations in breach-of-contract actions. Id. at 709.

The decision in Individual Healthcare Specialists did not resolve the issue as to whether the discovery rule could apply in breach-of-contract cases. Instead, the court explained that, "[t]he facts of this case do not compel us to either reject or adopt the holding in Goot, because the breach in this case does not qualify as 'inherently undiscoverable' under any definition." Id. at 712. The court held that "the discovery rule does not apply to this breach-of-contract action, because the alleged breach of systemic underpayments was not 'inherently undiscoverable' under any definition of that term." Id. at 715 (emphasis added).

There may be a factual question as to whether MAA, especially as a sophisticated entity, should have discovered that none of the Defendants, including Marsh, notified Liberty of Trentham's claim prior to the Tennessee trial court rendering judgment in Trentham's favor. But the Court must construe the facts in the First Amended Complaint in the light most favorable to MAA and draw all inferences in its favor. Accordingly, under the discovery rule and the current procedural posture of the case, MAA's breach of contract claim is timely, as the relevant facts that support MAA's breach of contract claim against Marsh may have been inherently undiscoverable. Therefore, Marsh's Motion to Dismiss the breach of contract claim as untimely is **DENIED**.

Marsh asserts that, even if MAA's breach of contract claim is timely, it should still be dismissed because it fails to allege the elements of a breach of contract claim. Stating a claim for breach of contract under Tennessee law requires a plaintiff to show "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." Tolliver v. Tellico Vill. Prop. Owners Ass'n, Inc., 579 S.W.3d 8, 25 (Tenn. Ct. App. 2019) (quoting C & W Asset Acquisition, LLC v. Oggs, 230 S.W.3d 671, 676–77 (Tenn. Ct. App. 2007)). Marsh's argument is simple: MAA's "breach of contract claim fails because it has not alleged conduct by Marsh that amounts to a breach of the Marsh Agreement, and the Marsh Agreement does not impose any obligation on Marsh to report claims arising under Plaintiff's general liability or excess policies." (ECF No. 69 at PageID 771–72.)

The basis for that assertion comes from the language from the Parties' contract, which MAA attached to the First Amended Complaint. (See ECF No. 46-1 (Exhibit E) at PageID 445–50.) The relevant provision explains that Marsh will

> prepare loss notices to insurers and notify insurers of claims; provided that your Marsh claims advocate is informed in writing by you of the claim, with details of the claim, and Marsh has placed the applicable policies or the Marsh claims advocate has been provided written notice by you of the applicable carrier and policies.

(Id. at PageID 445.)

Marsh asserts that, under this provision, it would have had to prepare loss notices of Liberty only upon the satisfaction of two conditions: first, "MALP must have informed its Marsh claims advocate in writing of the claim, with details of the claim," and, second, "either (a) Marsh to have placed the applicable policies or (b) MALP to have provided its Marsh claims advocate

with written notice of the applicable carrier and policies." (ECF No. 57-1 at PageID 700–01.) Marsh asserts that MAA has failed to allege that either of these conditions was satisfied.

As to the first condition, Marsh asserts that Great Prairie—not MALP—notified Marsh of the Trentham claim, which is "plainly insufficient to satisfy the first condition set forth in the relevant provision of the Marsh Agreement." Id. at PageID 701. This is especially so, according to Marsh, when considering that Great Prairie's claim services agreement with MALP, which is attached as Exhibit C to the First Amended Complaint, explicitly states that Great Prairie "shall act in an independent capacity and not as officers, employees, or agents of [MALP]." (Id. at n.5.) As to the second condition, Marsh simply states that MAA "does not allege that either (a) Marsh placed the Liberty Policy or (b) MALP provided Marsh with written notice of the Liberty Policy." (Id. at PageID 701.)

MAA counters that whether these two conditions were satisfied is a fact question that is ill-suited for disposition at the motion to dismiss stage. MAA has the better end of the argument, at least given the procedural posture of the case. It is true that the agreement between MALP and Marsh defines "you" as Mid-America Apartments L.P. (See ECF No. 46-1 at PageID 445.) But to read into that provision a prohibition on Great Prairie, or some other entity acting on MALP's behalf, providing the notice to Marsh is, as MAA suggests, to "elevate[] form over substance." (ECF No. 65 at PageID 749.) Marsh does not dispute that Great Prairie provided it with notice of the Trentham claim. On whose behalf would it have been acting if not MAA's?

As to the second condition, Marsh asserts that the question of "whether Marsh could be deemed to have placed the Liberty Policy" is "beside the point since the Amended Complaint does not allege that Marsh placed the Liberty Policy or that MALP provided Marsh with written notice of the policy." (ECF No. 69 at PageID 773.) But MAA alleges in the First Amended

Complaint that Marsh served as the Broker of Record for MAA's insurance program. When the Court draws the inferences in MAA's favor, there is a factual question as to whether Marsh placed the policy, satisfying the second condition.

Given the foregoing, including that the breach of contract claim is not dismissible based on the statute of limitations, Marsh's Motion to Dismiss MAA's breach of contract claim (Count 4) under Rule 12(b)(6) is **DENIED**.

II. Professional Negligence

Marsh similarly argues that MAA's professional negligence claim should be dismissed as untimely and because it "has failed to allege a duty of professional care that Marsh failed to fulfill separate and apart from its contractual obligations," and instead "has merely repackaged its breach of contract claim as a tort claim." (ECF No. 57-1 at 702–05.) MAA counters that the claims are timely and that, "as a licensed insurance professional" Marsh's duty "to exercise reasonable care exists independently of any contractual provision." (ECF No. 65 at PageID 753.)

Deciding the Motion does not require a determination of the timeliness of the professional negligence claim, because, as is explained in more detail below, the allegations in the First Amended Complaint fail to state a claim upon which relief can be granted because they do not identify obligations that Marsh owed to MAA independent of those found in the Parties' contract.[2]

[2] Although determining the applicable statute of limitations for the negligence claim is not necessary to resolve Marsh's motion to dismiss, the Court addresses it briefly since MAA asserts similar claims against the other Defendants. Marsh asserts that this is a professional negligence case, which carries a one-year statute of limitations. See Tenn. Code Ann. § 28-3-104(c)(1) ("Actions and suits against licensed public accountants, certified public accountants, or attorneys for malpractice shall be commenced within one (1) year after the cause of action accrued, whether the action or suit is grounded or based in contract or tort.") MAA, on the other

MAA asserts that it has alleged a duty of professional care independent of the Marsh agreement. (ECF No. 65 at PageID 752.) It then points to the language of the First Amended Complaint that it claims supports that position. But the language it cites is confounding, and does not do the work that MAA claims it does. The First Amended Complaint alleges that "Marsh failed to perform and breached its duties to Plaintiff with reasonable care as Plaintiff's insurance broker by failing to notify Defendant Liberty of the Underlying Claim." (ECF No. 65 at PageID 752 (quoting ECF No. 46 at PageID 424).) To that extent that sentence makes sense, it is unclear how Marsh's duty to notify Liberty of the underlying claim is somehow distinct from its obligation to do the very same under the contract.

MAA's broad assertion that Marsh's duty as a licensed insurance professional to exercise reasonable care exists independently of any contractual provision ignores the law in Tennessee that, "[o]rdinarily, it is not a tort for one of the contracting parties to breach the contract. Conduct constituting breach of contract becomes tortious only when it also violates a duty, independent of the contract, arising from wider principles of social responsibility." Thomas &

---

hand, asserts that its allegations against Marsh sound in ordinary tort, and thus carry a three-year statute of limitations. See Tenn. Code Ann. § 28-3-105(1) ("The following actions shall be commenced within three (3) years from the accruing of the cause of action: (1) Actions for injuries to personal or real property[.]")

Marsh's confusion is understandable, given that MAA asserted claims against it and co-Defendants Great Prairie and Lockton under Tennessee law for "professional negligence," a term typically used in the context of medical malpractice suits, or malpractice suits against attorneys and accountants, consistent with the language in § 28-3-104(c)(1). Nevertheless, as the court explained in Tip's Package Store, Inc. v. Com. Ins. Managers, Inc., 86 S.W.3d 543, 552 (Tenn. Ct. App. 2001), when § 28–3–104(a) "was amended to specifically provide that malpractice actions against attorneys and accountants were governed by a one year statute of limitations . . . [t]he legislature did not include professional negligence actions against insurance agents in this amendment." In spite of MAA's characterization of its claim as being one for professional negligence, the three-year statute of limitations for garden variety negligence under § 28-3-105(1) applies to MAA's negligence causes of action.

Assocs., Inc. v. Metro. Gov't of Nashville, No. M2001-00757-COA-R3CV, 2003 WL 21302974, at *6 (Tenn. Ct. App. June 6, 2003).

As Marsh points out in its Motion and its reply, "the Amended Complaint frames Marsh's duty to notify Liberty of claims as a contractual duty—not as part of its common law duty of professional care." (ECF No. 69 at PageID 776 (citing ECF No. 57-1 at PageID 705).) The crux of MAA's allegations against Marsh in the First Amended Complaint are that "Marsh committed an error and/or omission in failing to notify Defendant Liberty of the claim even though it was contractually obligated to do so under the terms and conditions of the parties insurance broker and risk management consultant agreement with MALP[.]" (ECF No. 46 at PageID 418.) MAA later makes its poorly worded allusion to "reasonable care" when it asserts its professional negligence claim against Marsh (see id. at PageID 424), but otherwise does not identify the source of the common law duty Marsh owes to MAA.

Marsh asserts that MAA "attempts to rectify this pleading deficiency by fleshing out the allegations underlying its professional negligence claim in its" response to the Motion to Dismiss, which is procedurally improper. (Id. (quoting Orea Energy Grp., LLC v. East Tenn. Consultants, Inc., No. 3:09-cv041, 2009 WL 3246853, at *3 (E.D. Tenn. Oct. 6, 2009) for the proposition that "it is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss" when certain "allegations are nowhere to be found in the complaint" and "are present only in plaintiff's briefing[.]")

To the extent that MAA has fleshed out its claim for professional negligence in response to the Motion to Dismiss, that is an improper vehicle to do so. And, the allegations in the First Amended Complaint as to this claim are so bare-bones that they can be barely be said to even qualify as "an unadorned, the-defendant-unlawfully-harmed-me accusation" or as "formulaic

recitation of the elements" of a claim for professional negligence that would nevertheless be insufficient to state a claim upon which relief could be granted. See Twombly, 550 U.S. at 555. Accordingly, Marsh's Motion to Dismiss the professional negligence claim (Count 7) is **GRANTED**.

III. Equitable Indemnity

Finally, Marsh asserts that MAA's claim seeking equitable indemnity or contribution from it "is improper and must be dismissed because both doctrines are designed to allocate liability among joint tortfeasors for a shared injury. They do not apply where, as here, one party seeks to recover its own direct damages from another party." (ECF No. 57-1 at PageID 705-706.) According to Marsh, MAA seeks to recover damages directly from it, but "[b]ecause there is simply no allegation that Plaintiff and Marsh are joint tortfeasors that are liable for the same injury, the doctrines of contribution and indemnity are inapplicable." (Id.)

MAA argues that Marsh's argument "ignores both the procedural posture in which the claim is pled and the substantive predicate that the Amended Complaint plausibly establishes." (ECF No. 65 at PageID 753.) It also asserts that the equitable indemnity and contribution claim is "expressly pled as an alternative to its breach of contract and professional negligence claims against Marsh, not as a duplicative attempt to recover the same direct damages twice." (Id.)

As Marsh points out, the issue with MAA's equitable indemnity claim is not whether it is a duplicative attempt to recover the same direct damages twice. Instead, the issue is that MAA has not plead, and it is unclear how it could, that it and Marsh are joint tortfeasors. Claims for "[c]ontribution and indemnity . . . are remedies a party seeks after having been found liable for tortious conduct, designed to recover all or part of the loss from another responsible party." Northland Ins. Co. v. State, 33 S.W.3d 727, 730 (Tenn. 2000) (citing Owens v. Truckstops of

America, 915 S.W.2d 420, 433 (Tenn. 1996)). To the extent Marsh may be liable to MAA, Marsh might have a claim for contribution and indemnity against one of the other Defendants. MAA's position that "[t]he precise apportionment of responsibility among Great Prairie, Lockton, and Marsh cannot be determined without further factual development" (ECF No. 65 at PageID 755), may be true, but that has no bearing on whether MAA has stated a claim for contribution or indemnity against Marsh. Because it has not, Marsh's Motion to Dismiss that claim (Count 9), is **GRANTED**.

## CONCLUSION

Consistent with the foregoing, Marsh's Motion to Dismiss **is GRANTED IN PART and DENIED IN PART**. MAA's claim for breach of contract against Marsh (Count 4) shall go forward. Its claims for professional negligence (Count 7) and contribution/indemnity (Count 9) are **DISMISSED**.

**IT IS SO ORDERED**, this 23rd day of November, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE